## UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| In re | |
| **STEVE CAVANAUGH LIMITED PARTNERSHIP**, | Case No. **08-61002-11** |
| Debtor. | |
| **BROADWATER COUNTY, A POLITICAL SUBDIVISION OF THE STATE OF MONTANA**, | |
| Plaintiff. | Adv No. **08-00059** |
| -vs- | |
| **BANK OF THE ROCKIES, N.A., ROLLING GLEN RANCH CORPORATION, STEVE CAVANAUGH LIMITED PARTNERSHIP, STEVEN L CAVANAUGH**, **and SUSAN L CAVANAUGH**, | |
| Defendants. | |

## MEMORANDUM of DECISION

At Butte in said District this 22nd day of March, 2010.

This Adversary Proceeding was commenced when Defendant Steve Cavanaugh Limited Partnership removed a pending civil case from the Montana First Judicial District Court, Broadwater County, as Case No. DV-08-41, entitled *Broadwater County vs. Donald Neu and Janette Neu et al.*, to this Court after Debtor filed a Chapter 11 bankruptcy petition on July 25, 2008. The pending action was filed against the following Defendants: Donald and Janette Neu,

1

Created by Neevia Document Converter trial version http://www.neevia.com

American General Financial Services, Inc., Skipper's Limited Partnership, Bank of the Rockies, N.A., William Hileman, Timothy Fallaw, James A. Mclean, Rolling Glen Ranch Corporation, Steve Cavanaugh Limited Partnership, and Steven L. and Susan L. Cavanaugh.

On September 7, 2009, the Bank of the Rockies sought to amend its counterclaim against the Plaintiff Broadwater County, a political subdivision of the State of Montana ("County"), arguing that on May 23, 2008, the County filed its Complaint in this matter seeking a declaration that Bank of the Rockies' security interests are subject to the respective Subdivision Improvements Agreements of Rolling Glen Ranch, and that no title to the property would transfer unless Bank of the Rockies paid the County $10,500 per lot.  On July 24, 2008, Bank of the Rockies filed its Answer and Counterclaim.  Bank of the Rockies then sought to amend its Counterclaim to include an unconstitutional taking claim under the U.S. Constitution.   Bank of the Rockies' aforementioned motion was granted on September 23, 2009, and Bank of the Rockies filed its Amended Counterclaim on September 24, 2009, doc. 19.  The County filed a reply to the Amended Counterclaim on September 26, 2008, which reply included a demand for jury trial.

On October 16, 2008, the County filed an Amended Complaint, doc. 29.  Bank of the Rockies subsequently filed an amended answer, doc. 42, to the Amended Complaint on October 27, 2008, and incorporated by reference its amended counterclaim, doc. 19.  Donald and Janette Neu filed an answer to the County's amended complaint on October 21, 2008, Essex 400 filed an answer on October 22, 2008, Essex 500 filed an answer on October 23, 2008, Boone 600 and American General Financial Services filed answers on October 24, 2008, Steven L. Cavanaugh, Susan L. Cavanaugh, Rolling Glen Ranch Corporation, and the Debtor Steve Cavanaugh Limited

2

Created by Neevia Document Converter trial version http://www.neevia.com

Partnership filed a combined answer on October 31, 2008, James A. McLean and Skipper's Limited Partnership filed a combined answer on November 7, 2008, First Horizon Home Loans, a Division of First Tennessee Bank, filed an answer and counterclaim on November 11, 2008.

Thereafter, the County and First Horizon Home Loans entered into a stipulation for the dismissal of First Horizon Home Loans from this Adversary Proceeding. The stipulation was approved and First Horizon Home Loans was dismissed from this proceeding. Similarly, the County and William Hileman entered into a stipulation for the dismissal of William Hileman from this proceeding, which stipulation was approved on February 5, 2009. The County also entered into a stipulation for dismissal with Donald and Janette Neu; Essex Ventures, LLP; Quality Supply, Inc. PSP&T; Ashcraft and Moreland MP, PC EPSP; J&MC, LLP; Janice Elliott; Tripp Lumber Company, Inc., ERP; The Weeks Alaska Community Property Trust; Stephen S. Ellis, M.D., P.C.; Stanley N. Smith; Barbara L. Simonsen; Russell Brooks; Grace M. Brooks; Thomas H. Boone, Trustee of the Boone, Karlberg ESPT; Wells & McKittrick, P.C. 401K Retirement Plan; Peterson Investments of Missoula, LLC; and Lawson Low 401K Retirement Plan, also known as Essex 400, Essex 500 and Boone 600. The stipulation dismissing the above parties was approved on June 30, 2009. On August 12, 2009, the County and Skipper's Limited Partnership entered into a stipulation to dismiss all claims between the County and Skipper's Limited Partnership. That stipulation was approved that same date. The County and American General Financial Services filed a stipulation for the dismissal of the claims between the County and American General Financial Services, which stipulation was approved September 8, 2009. The County filed on September 8, 2009, a notice of dismissal of Timothy A. Fallaw, trustee for the Defendant American General Financial Services. Finally, on December 15, 2009, the

3

Plaintiff filed a Stipulation dismissing James A. McLean from these proceedings.  Given the foregoing, the County, the Broadwater Board of Commissioners and Donald J. Dixson remain as the Plaintiffs and Bank of the Rockies, Rolling Glen Ranch Corporation, the Debtor, and Steven L. and Susan L. Cavanaugh remain as the Defendants.

On October 26, 2009, this Court entered summary judgment in favor of Bank of the Rockies as to Count I of the County's Complaint.  The County's Count II, Breach of Contract claim, does not involve Bank of the Rockies.  The County and Bank of the Rockies recently mediated the Bank of the Rockies' counterclaims against the County.  The Court has scheduled a telephonic status conference for April 7, 2010, so the County and Bank of the Rockies can advise the Court on the status of these proceedings following the mediation and to further consider the County's pending Motion to Remand Adversary Proceedings to State Court, filed January 14, 2009, at docket entry no. 97, and the objection thereto by the Debtor/Defendant, Steve Cavanaugh Limited Partnership.

Ripe for decision in this Adversary Proceeding is a Motion for Summary Judgment filed on November 23, 2009, docket entry no. 211, by Steven L. and Susan L. Cavanaugh (the "Cavanaughs").  The Cavanaughs' Motion for Summary Judgment is accompanied by a Statement of Undisputed Facts filed at docket entry no. 212 and a Memorandum in Support of Motion for Summary Judgment filed at docket entry no. 213.  Broadwater County filed an Objection to the Cavanaughs' motion for summary judgment on December 3, 2009, at docket entry no. 214, and a Statement of Disputed and Additional Facts at docket entry no. 215.  The Cavanaughs filed a reply to Broadwater County's opposition on January 4, 2010.  After due notice, a hearing on the Cavanaughs' motion for summary judgment was held January 5, 2010, in

4

Butte.  Steven L. Cavanaugh appeared pro se and Thomas A. Budewitz of Helena, Montana

appeared on behalf of the County.  The Court heard no witness testimony and no exhibits were

offered into evidence.

### STATEMENT OF UNDISPUTED and DISPUTED FACTS

In accordance with Mont. LBR 7056-1(a)(1), the Cavanaughs submitted the following

statement of undisputed facts.

1. Debtor granted liens upon fifty-six (56) lots in the Rolling Glen Ranch Subdivision, specifically those lots identified as lots number 10, 11, 12, 13, 14, 15, 17, 18, 18, 20, 21, 23, 24, 25, 26, 27, 30, 31, 32, 33, 34, 35, 37, 38, 40, 41, 42, 43, 44, 45, 46, 47, 53, 57, 58, 59, 60, 61, 63, 64, 66, 67, 68, 69, 70, 71, 72, 73, 78, 80, 106, 116, 118, 119, 120, and 125.  The Debtor is the owner of each of the foregoing lots.  (Steven L. Cavanaugh Aff. Paragraph 2, Exh. A).

2.  The Debtor intended to give first position secured liens upon each of the foregoing lots as collateral in order to secure repayment of the loans made to Debtor.  (Steven L. Cavanaugh Aff. Paragraph 3, Exh. A).

3.  Broadwater County entered into two Subdivision Improvements Agreements with Rolling Glen Ranch Corporation.  At the time the two Subdivision Improvements Agreements were executed and recorded, Rolling Glen Ranch Corporation did not own or have any ownership interest in any of the fifty-six (56) lots that were pledged as collateral.  (Steven L. Cavanaugh Aff. Paragraph 5, Exh. A).

4.  The Debtor was not a party to the Subdivision Improvements Agreements dated February 13, 2006, that are related to this Declaratory Judgment Action.  (Exh. D).

5.  Broadwater County admits that only "the Developer" (Rolling Glen Ranch Corporation) signed the Subdivision Improvements Agreements.  (Broadwater County Admission No. 36, Exh. F).

6.  Broadwater County admits that it has no evidence to establish that Rolling Glen Ranch Corporation was the owner of any of the real property in the Rolling Glen Ranch Subdivision when the Subdivision Improvements Agreements were executed and recorded.  (Broadwater County Admission No. 57, Exh F).

Created by Neevia Document Converter trial version http://www.neevia.com

7.  The Debtor, Steve Cavanaugh Limited Partnership, was not a party to the two Subdivision Improvements Agreements.  (Steven L. Cavanaugh Aff. Paragraph 5, Exh. A).

7-A.  Steven L. Cavanaugh was not a party to the two Subdivision Improvements Agreements.  (Steven L. Cavanaugh Aff. Paragraph 9, Exh. A).

7-B.  Susan L. Cavanaugh was not a party to the two Subdivision Improvements Agreements.  (Steven L. Cavanaugh Aff. Paragraph 10, Exh. A, and Susan L. Cavanaugh Aff. Paragraph 4, Exh. H).

8.  When it executed the two Subdivision Improvements Agreements, Rolling Glen Ranch Corporation did not intend to give Broadwater County a lien upon the fifty-six (56) lots the Debtor pledged as collateral to secure loans made to Debtor. (Steven L. Cavanaugh Aff. Paragraph 7, Exh. A).

9.  There is no language in the Subdivision Improvements Agreements that creates a lien against the fifty-six (56) lots that were pledged as collateral to secure loans made to Debtor.  (Exh. B).

10.  The Subdivision Improvements Agreements contained explicit language identifying the rights of Broadwater County in the event of a default, see Exh. B. [The] Subdivision Improvements Agreements stated:

> 15.  Local Government, Rights Upon Default:
>
> > A.  Upon the occurrence of an event of default, the County may draw on Developer's financial guarantee to the extent of the face amount of the Guarantee less the estimated costs (as shown in Attachment B) of all of the improvements previously certified by the County.  The County shall have the right to complete improvements itself or contract with a third party for completion, or the County may assign the proceeds of Developer's financial guarantee to a subsequent Developer who has acquired the Subdivision and who does have the same rights of completion as the County if and only if the subsequent developer agrees in writing to complete the unfinished improvements.
> >
> > B.  In addition, the County may suspend final plat approval during which time the Developer shall have no right to sell, transfer or otherwise convey lots or homes within the Subdivision without the express approval of the County or until the improvements are completed and certified by the County.  (Subdivision

6

Created by Neevia Document Converter trial version http://www.neevia.com

Improvements Agreements, Exh. B).

11.  Under the two Subdivision Improvements Agreements, Broadwater County's express remedies did not include asserting a lien upon lots in the Rolling Glen Ranch Subdivision and did not include foreclosing upon lots in the Rolling Glen Ranch Subdivision.  (Subdivision Improvements Agreements, Exh. B).

12.  In the event of a default under the two Subdivision Improvements Agreements, all of Broadwater County's remedies were against the "Developer", Rolling Glen Ranch Corporation and were not against Debtor Steve Cavanaugh Limited Partnership, Steven L. Cavanaugh or Susan L. Cavanaugh which were not a party to the Agreements.  (Subdivision Improvements Agreements, Exh. B).

13.  Broadwater County obtained a Platting Certificate (title report) on Rolling Glen Ranch Subdivision before the Subdivision Improvements Agreements were executed.  The title report showed that the owner of the real property was Debtor Steve Cavanaugh Limited Partnership and not Rolling Glen Ranch Corporation. (See Platting Certificate Exh. G and Julie Lethert deposition, p. 206, line 15 and p. 209, line 24, Exh. C).

14.  The two Subdivision Improvements Agreements are based upon Broadwater County's model form for Subdivision Improvements Agreements.  (Request No. 38 and 38 Admissions, Exh. F).

15.  When Broadwater County negotiated the Subdivision Improvements Agreements with Rolling Glen Ranch Corporation, Broadwater County did not request or seek a security interest in or lien upon any of the fifty-six (56) lots that Debtor pledged as collateral to secure loans made to Debtor.  (Steven L. Cavanaugh Aff. Paragraph 8, Exh. A).

16.  Debtor Steve Cavanaugh Limited Partnership has not granted Broadwater County a lien on the fifty-six (56) lots that were pledged as collateral to secure loans made to Debtor.  (Steven L. Cavanaugh Aff. Paragraph 4, Exh. A).

17.  Debtor intended to give the Lenders a first position security interest in each of the fifty-six (56) lots in order to secure repayment of the loans made to Debtor. (Steven L. Cavanaugh Aff. Paragraph 3, Exh. A).

18.  One of the requirements for recording a document in Montana is the signature of the property owner.  (Judy Gillespie Depo, Page 24, lines 15-24, Exh. E).

19.  When Broadwater County entered into the two Subdivision Improvements Agreements, it was looking to Rolling Glen Ranch Corporation to fund or

7

complete the road improvements.  (Julie Lethert Depo, p. 139, lines 2-5, Exh. C).

20.  Broadwater County has acknowledged that it made a mistake when the Subdivision Improvements Agreements were executed.  Steve Cavanaugh Limited Partnership should have been a party to the Subdivisions Improvements Agreements because it was the owner of the real property.  Since only Rolling Glen Ranch Corporation was a party, the Subdivision Improvements Agreements were never signed by anyone in the chain of title with respect to the real property.  When questioned about this, the County Planning Director testified:

> Q.     So lets say the Developer at the time these agreements was [sic] signed did not own any lots in Rolling Glen Ranch Subdivision, what should the Developer be obligated to pay for the road improvements?
>
> A.     He should not have signed it.
>
> Q.     Why?
>
> A.     Because he didn't have any legal right to sign it if he was not involved in the sale of the lots.  He is using it as a financial guarantee, he will cause, you know, so much money to be paid to the County out of each lot sold and if he didn't have the legal right then he should not have signed the Agreement.  It would be like me buying a lot and asking somebody else to sign an agreement for building my driveway when you know, they didn't have the authority to even build the driveway or pay whoever built it, you know, they just shouldn't have signed it.
>
> Q.     Something smells here, would you agree with that?
>
> A.     It just was not drafted properly.
>
> Q.     Is that how you would characterize it is.  It wasn't properly drafted?
>
> A.     (Nods head.)
>
> Q.     You are not suggesting–
>
> A.     It wasn't accurate.  (Julie Lethert Depo., p. 172, line 16, p. 173, line 20, Exh. C).

8

Created by Neevia Document Converter trial version http://www.neevia.com

21. County Commissioner Elaine Mann has no recollection of Broadwater County having any intention to have a security interest in the lots on the Rolling Glen Ranch Subdivision in order to guarantee the construction of the road referenced in the Subdivision Improvements Agreements.  Ms. Mann testified:

     Q.     As County Commissioner was it your intention to have a security interest in any of the lots in Phase 1 and 2 to guarantee that those roads would be built?

     A.     I don't remember that we did.  (Elaine Mann Depo., p. 126, l. 13-17, Exh. D).

22. Broadwater County Commissioner Elaine Mann acknowledged that an agreement that is not signed by the property owner is not binding on the property owner:

     A.     Being the property owner is not a developer, I don't know how that would bind the property owner.  (Mann Depo., p.139, l.25, p.140, l.2, Exh.D).

23. County Commissioner Elaine Mann acknowledged that the only person that was financially liable under the Subdivision Improvements Agreements was Rolling Glen Ranch Corporation:

     Q.     Under the Subdivision Improvements Agreements, you may have to turn back a couple of pages to look, in particular at section 4 on page 2, who is the financially responsible party?

     A.     The developer.

     Q.     And who is the developer again?

     A.     Rolling Glen Ranch Corporation.

     Q.     Under the Subdivision Improvements Agreements, Exhibits 3 and 4, is anyone else financially responsible?

     A.     Not that I know of.

     Q.     When you were a County Commissioner did you intend for anyone other than the, excuse me, anyone other than Rolling Glen Ranch Corporation to be financially responsible under these agreements?

9

Created by Neevia Document Converter trial version http://www.neevia.com

  A. No.  (Mann Depo., p. 144, line 14, p. 145, line 4, Exh.D).

24.  Former Planning Director Julie Lethert acknowledged that Broadwater County obtained a platting certificate that verified that Debtor was the owner of the real property before the Subdivision Improvements Agreements were recorded.  Ms. Lethert testified:

  Q. ...can you tell us what Exhibit 6 is?

  A. It is a platting certificate or a certificate of title.

  Q. For what purpose?

  A. It just verified who the owner of the property is.

  Q. Would this relate to the recording of the plat on Phase 2 of Rolling Glen Ranch Subdivision?

  A. Yes.

  Q. And was this recorded the same time as the SIA that we discussed earlier?

  A. Yes.

  Q. Who does Exhibit 6 show as the owner of the real property?

  A. Steve Cavanaugh Limited Partnership.

  Q. So this information was disclosed to Broadwater County before the Subdivision Improvements Agreements were recorded, would you agree?

  A. Yes.  (Lethert Depo., p.206, line 22, p. 207, line 18, Exh C).

In response to the Cavanaughs' motion for summary judgment, the County filed an Objection on December 3, 2009, along with a Statement of Disputed and Additional Facts, wherein the County counters:

1.  The property that is the subject of this dispute is Rolling Glen Ranch Subdivision located in the south portion of Broadwater County near the Three Forks junction.

Created by Neevia Document Converter trial version http://www.neevia.com

2.   Steve Cavanaugh owns 100% of Rolling Glen Ranch Corporation ["RGR Corp."] and 48% of Steve Cavanaugh Limited Partnership ["SCLP"].  His wife [Susan L. Cavanaugh] owns 47% of SCLP, his daughter owns 4% and RGR Corp. is the general partner and owner of 1%.  (Cavanaugh dep. at 43, 44, and 53).

3.   Cavanaugh entered into a buy-sell agreement to purchase the land from Dennis Rahn through another company, Mission Park LLC on October 30, 2003.  He filed the Articles of Incorporation of RGR Corp. with the Secretary of State on May 12, 2004 and he submitted the application for preliminary plat approval on May 27, 2004.  (Cav. 87, 39, 98).  Closing of the Rahn transaction was conditioned on preliminary plat approval. (Cav. 94).

4.   Preliminary plat approval was obtained on August 18, 2004.  (See Exhibit 33 attached to Hohn affidavit).  The closing took place on October 1, 2004, when RGR Corp. acquired the land by deed from Rahn on a buy-sell from Rahn to Mission Park, Inc. (Cavanaugh Dep. Ex. 15, 16) and final plat approval of Phase I was given on October 18, 2004.  (Cav. 117; Cav. Dep. Ex. 39).  On October 26, 2004, Cavanaugh created Steve Cavanaugh Limited Partnership (Cav. 51-52) and on October 27, 2004, transferred the Rahn land to SCLP (Cav. 117).

5.   There was no consideration for the transfer of land to SCLP.  RGR Corp. would incur all expenses and develop the property.  RGR Corp. hired all surveyors, engineers, road contractors.  Cavanaugh was not aware of any written agreements between RGR Corp. and SCLP.  (Cav. at pp. 142-146).

6.   Cavanaugh does not recall whether he told the County about the transfer to SCLP. (Cav. 118).

7.   There were no capital contributions made by any of the limited partners of SCLP, the principal office of the limited partnership is at Cavanaugh's home and Cavanaugh was given authority to sign checks for SCLP as president of RGR Corp.  (Cav. at pp. 64-66, 69-, 70 and 76).  All transfers to SCLP were gifts, there was no contribution.  (Cav. at p. 55).  The limited partnership agreement sets out the general authority of the general partner at Section 6.01 stating in part:

> 6.01 General Authority of the General Partner.
> Subject to the specific rights given to the limited partners in this agreement, the <u>general partner shall make all decisions respecting any matter affecting or arising</u> <u>out of the conduct of the business of the partnership.  The general partner has the</u> <u>exclusive right and full authority to manage, conduct and operate the partnership</u> <u>business</u>.  (Emphasis in County's Statement of Disputed and Additional Facts).

And at Section 6.04 it is stated:

> 6.04 Authorization to Execute Certain Instruments.

11

Created by Neevia Document Converter trial version http://www.neevia.com

With respect to all of its obligations, powers, and responsibilities under this agreement, the general partner is authorized to execute and deliver, for and on behalf of the partnership, such notes and other evidence of indebtedness, contracts, agreements, assignments, deeds, leases, loan agreements, mortgages, and other security instruments and agreements in such form, and on such terms and conditions as the general partner deems proper in its sole discretion.  (Cav. depo Exhibit 14 at pp. 6-2 and 6-3).

8.  SCLP was created for tax purposes.  (Cav. at pp 50, 52).

9.  The decision as to whether the money from any lot sales would go to RGR Corp. or SCLP was determined by which of them would get the greatest tax advantage.  (Cav. at pp 156, 157).  RGR Corp. was a Subchapter S Corporation.  (Cav. at pp. 157-158).  Steve Cavanaugh would take draws from the entities from time to time.  There were no preset amounts.  He took enough to pay his bills, travel, etc., generally at least $10,000 per month.  (Cav. at pp. 158-160).

10.  Generally, when SCLP would sell a lot, it paid RGR Corp. for its expenses.  Costs that needed to be paid in order to clear title would be paid by the title company.  Other expenses would be paid to RGR by check.  (Cav. at pp. 149-152).

11.  The conveyance of the land from RGR Corp. to SCLP was subject to the conditions of subdivision approval.  (Cav. at p. 156).

12.  Although both Phase I and Phase II are shown on the same plat, SCLP could not sell Phase II lots until it received final plat approval on February 13, 2006.  The conditions of preliminary plat approval required the improvement or construction of certain access roads. Certain of those conditions were deferred until final approval of Phase II was requested.  When those improvements had not been completed by the time Phase II final approval was requested the county planner Julie Lethert, informed Cavanaugh that the conditions of final approval of Phase II would require, among other things, a road improvement agreement for RGR's estimated portion of the construction costs and road costs.  The SIA's required an agreement from a designated title company for the disbursement of funds from lot sales directly to Broadwater County for road improvements and a road improvement agreement for Rolling Glen Ranch Road. (Cav. dep. Exhibit 38, items 7, 8, and 10; Cav. 123, 215, 217).  Stewart Title acknowledged such agreement in a letter.

13.  Cavanaugh then offered to have his attorney Joel Guthals, prepare the subdivision improvement agreements using the county's suggested form.  (Cav. at p. 359).  The subdivision improvement agreement was a method to defer payment for the construction costs.  (Cav. at p. 361).  Cavanaugh said that they did not have the money but "we certainly had lots we could sell to do that, we had the assets . . . ."  (Cav. at p. 363).

14.  Lethert arranged to have the form emailed to Guthals who prepared the agreements.

Created by Neevia Document Converter trial version http://www.neevia.com

(Lethert at pp. 112-116).

15.  Cavanaugh sent copies of the proposed agreements to the County with an email of
January 26, 2006 (Cav. Exhibit 48; Cav. dep. at p. 367).

16.  Cavanaugh signed the agreements but claims that he did not read them entirely.  He
said that if his attorney said they were ready to go then he didn't need to read them.  (Cav. at p.
393).  Copies of the signed subdivision improvements agreements without exhibits are attached
as identified as Exhibits 49 and 50 in the Cavanaugh deposition.  The agreements vary slightly
because they address different roads with different obligations.  The Wheatland Road agreement,
Exhibit 49, required payment of $310,842.56 by the developer within two years of the effective
date which was February 13, 2006.  Paragraph 4C provides for payment of the balance after
certain credits stating:

> C.  Toward its financial guarantee, developer shall cause $260,842.56 to
> be deposited into the Broadwater County escrow account by remitting $6,500
> from every lot sold in Rolling Glen Ranch Subdivision Phases I and II after final
> plat approval of Rolling Glen Ranch Subdivision Phase II.  Developer shall
> designate Stewart Title of Bozeman to close the sales of all Rolling Glen Ranch
> Subdivision lots.  A commitment shall be issued by Stewart Title of Bozeman
> providing that, as escrow agent for Rolling Glen Ranch Subdivision and Rolling
> Glen Ranch Corporation, Stewart Title of Bozeman will deliver $6,500 per lot
> from Rolling Glen Ranch Subdivision Phases I and II to Broadwater County for
> Wheatland Road improvements until Rolling Glen Ranch Corporation's portion
> of Wheatland Road improvements are paid in full.  The County is restricted to
> collecting not more than $260,842.56 for Rolling Glen Ranch Subdivision lot
> sales.  Stewart Title of Bozeman will tender said funds directly to the County and
> maintains its obligations to do so until developer's obligations have been paid in
> full.  (Emphasis in County's Statement of Disputed and Additional Facts).

17.  Exhibits 49 and 50 also contain the following provision in the event of default:

> 15.  Local Government Rights Upon Default:

> A.  Upon the occurrence of any event of default, the county may
> draw on developer's financial guarantee to the extent of the face amount of
> the guarantee less the estimated cost (as shown in attachment B) of all
> improvements previously certified by the County.  The County shall have
> the right to complete improvements itself or contract with a third party for
> completion, or the County may assign the proceeds of developer's
> financial guarantee to a subsequent developer who has acquired the
> subdivision and who shall have the same rights of completion as the
> County if and only if the subsequent developer agrees in writing to

13

Created by Neevia Document Converter trial version http://www.neevia.com

complete the unfinished improvement.

> B.  In addition, the County may suspend final plat approval during which time the developer shall have no right to sell, transfer, or otherwise convey lots or homes within the subdivision without the express approval of the County or until the improvements are completed and certified by the County.  (Emphasis added).

18.  A line by line comparison of the actual agreements with the county form shows that Mr. Guthals read every line of the form and changed it as he felt appropriate.  (Cav. 375-385).

19.  Although the County planner, Lethert, obtained a platting certificate showing that the actual owner of the property was Steve Cavanaugh Limited Partnership, she did not notice the difference in the names.  (Lethert dep. at p. 209).  "I just did not know that they were two different entities."  (Lethert 210).

20.  The subdivision improvements agreements were listed under exceptions to the title on Schedule B of title reports issued by Stewart Title after February 13, 2006.  The title commitments also referenced the original conditions of subdivision plat approval.  (See Bank of the Rockies production responses - BR-001954 through BR-001973).  Those conditions included the following:

> 7.  The County roads, known as Wheatland and Dunbar (North & South to be changed to Rolling Glen Ranch Rd.) must be improved to Broadwater County Road Design Standards, prior to final plat approval.

> * * *

Additional Requirements for Phase II:

1.  Wheatland Road, from the intersection of Highway 287 to Dunbar Road (Rolling Glen Ranch Road) to the subdivision boundary.  This road must be paved with a 24 foot road surface to meet the minimum requirement of 750 vehicles per day.  This is to be done at the expense of the developer.  A final inspection must be performed and approved documented by a licensed Professional Engineer and the County Road Supervisor.  (Cav. Dep. Ex 33).

21.  Upon each sale occurring after February 13, 2006, the closing agent, Stewart Title, withheld the sum of $10,500 ($6,500 for Wheatland Road and $4,000 for Rolling Glen Ranch Road) and transmitted that amount to the County.  (See, for example, Bank of the Rockies production response - BR00002330 - BR-0002332 for settlement date of 2/15/2006 and attached settlement statement dated 3/30/2007 with copy of warranty deed for sale of Lot 54 on 3/30/2007 to Eickelberg).  (From Cavanaugh response to request for production, Exhibit 5).  Both

14

Created by Neevia Document Converter trial version http://www.neevia.com

settlement documents and the accompanying deed are signed by an authorized officer of Steve Cavanaugh Limited Partnership indicating its consent in the arrangement to withhold funds and forward funds to Broadwater County pursuant to SIA's.

22.   The County received thirteen separate payments from the title company from thirteen sales closed after February 13, 2006, in the total amount of $10,500 each ($4,000 and $6,500). (Affidavit of Rhonda Nelson).

23.   The Bank of the Rockies loans were made jointly to and guaranteed by Steve Cavanaugh Limited Partnership, Rolling Glen Ranch Corporation and Steve Cavanaugh and Susan Cavanaugh.  (See documents attached to Bank of the Rockies creditor claims).

24.   Initial approval of the preliminary plat was given to Steve Cavanaugh and Susan Cavanaugh personally.  (Cav. Dep. Ex 33).  Final plat approval of Phase I was requested by and given personally to the Cavanaughs.  (County RFP, Bates #1731; Cav. Dep. Ex. 39).

25.   Correspondence to the County was on "Rolling Glen Ranch" stationary without reference to either corporate or partnership entities.  (Cav. Dep. Ex 37).

26.   RGR Corp.'s purchase of the land was financed with an $800,000 loan from Bank of the Rockies.  (Cav. Dep. Ex. 17).

27.   On the day of his deposition he was driving a vehicle owned by RGR Corp. (Cav. at p. 159).

28.   When asked how much money he and Susan received personally from the "whole business" in 2005, he said they had a "tax consequence of about 150 grand," indicating taxable income of about $400,000.  (Cav. at p. 159).

29.   SCLP filed bankruptcy July 25, 2008, claiming liabilities in excess of $4,000,000 including $200,000 owed to Rolling Glen Ranch (without indicating any corporate status). (Voluntary Petition and attached schedules - see Court file).

## SUMMARY JUDGMENT

Summary judgment is governed by FED.R.BANKR.P. 7056.  Rule 7056, incorporating

FED.R.CIV.P. 56(c), states that summary judgment "should be rendered if the pleadings, the

discovery and disclosure materials on file, and any affidavits show that there is no genuine issue

as to any material fact and that the movant is entitled to judgment as a matter of law."  "The

15

Created by Neevia Document Converter trial version http://www.neevia.com

proponent of a summary judgment motion bears a heavy burden to show that there are no

disputed facts warranting disposition of the case on the law without trial." *Younie v. Gonya (In*

*re Younie)*, 211 B.R. 367, 373 (9th Cir. BAP 1997) (quoting *Grzybowski v. Aquaslide "N' Dive*

*Corp. (In re Aquaslide "N" Dive Corp.)*, 85 B.R. 545, 547 (9th Cir. BAP 1987)).  The manner in

which this burden is proven depends on which party has the burden on a particular claim or

defense at the time of trial.

> If the *moving* party will bear the burden of persuasion at trial, that party must
> support its motion with credible evidence–using any of the materials specified in
> Rule 56(c)–that would entitle it to a directed verdict if not controverted at trial.
> Such an affirmative showing shifts the burden of production to the party opposing
> the motion and requires that party either to produce evidentiary materials that
> demonstrate the existence of a "genuine issue" for trial or to submit an affidavit
> requesting additional time for discovery.  If the burden of persuasion at trial would
> be on the *non-moving* party, the party moving for summary judgment may satisfy
> Rule 56's burden of production in either of two ways. First, the moving party may
> submit affirmative evidence that negates an essential element of the nonmoving
> party's claim. Second, the moving party may demonstrate to the Court that the
> nonmoving party's evidence is insufficient to establish an essential element of the
> nonmoving party's claim.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 330-34, 106 S.Ct. 2548, 2557, 91 L.Ed.2d 265  (1986)

(Brennan dissent) (citations omitted).  *See also Nissan Fire & Marine Ins. Co., Ltd. v. Fritz*

*Companies, Inc.*, 210 F.3d 1099, 1102-06 (9th Cir. 2000) (discussing burdens for withstanding

summary judgment).

    When seeking summary judgment, the moving party must initially identify those portions

of the record before the Court which it believes establish an absence of material fact.  *T.W. Elec.*

*Serv., Inc. v. Pacific Elec. Contractors Ass'n.*, 809 F.2d 626, 630 (9th Cir. 1987).  If the moving

party adequately carries its burden, the party opposing summary judgment must then "set forth

specific facts showing that there is a genuine issue for trial." *Kaiser Cement Corp. v. Fischback*

Created by Neevia Document Converter trial version http://www.neevia.com

*& Moore, Inc.*, 793 F.2d 1100, 1103-04 (9th Cir. 1986), *cert. denied*, 469 U.S. 949 (1986); FED.

R. CIV. P. 56(e).  *See also Frederick S. Wyle Prof'l. Corp. v. Texaco, Inc.*, 764 F.2d 604, 608 (9th

Cir. 1985) ("the opponent must affirmatively show that a material issue of fact remains in

dispute").  That is, the opponent cannot assert the "mere existence of some alleged factual

dispute between the parties." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S.Ct.

2505, 2510, 91 L.Ed.2d 202 (1986).  Moreover, "[a] party opposing summary judgment may not

simply question the credibility of the movant to foreclose summary judgment."  *Far Out Prods.,*

*Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001).

   To demonstrate that a genuine factual issue exists, the objector must produce affidavits

which are based on personal knowledge and the facts set forth therein must be admissible into

evidence.  *Aquaslide*, 85 B.R. at 547.  All reasonable doubt as to the existence of genuine issues

of material fact must be resolved against the moving party.  *Liberty Lobby,* 477 U.S. at 247-48,

106 S.Ct. at 2509.  However, "[d]isputes over irrelevant or unnecessary facts will not preclude a

grant of summary judgment." *T.W. Elec. Serv.*, 809 F.2d at 630 (citing *Liberty Lobby*, 477 U.S.

at 248, 106 S.Ct. at 2510).  "A 'material' fact is one that is relevant to an element of a claim or

defense and whose existence might affect the outcome of the suit.  The materiality of a fact is

thus determined by the substantive law governing the claim or defense."  *Id.*

   If a rational trier of fact might resolve disputes raised during summary judgment

proceedings in favor of the nonmoving party, summary judgment must be denied.  *T.W. Elec.*

*Serv.*, 809 F.2d at 630; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587,

106 S.Ct. 1348, 1356, 89 L.Ed.2d 202 (1986).  Thus, the Court's ultimate inquiry is to determine

whether the "specific facts" set forth by the nonmoving party, viewed along with the undisputed

Created by Neevia Document Converter trial version http://www.neevia.com

background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence. *T.W. Elec. Serv.*, 809 F.2d at 631. In the absence of any disputed material facts, the inquiry shifts to whether the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552-53.

## DISCUSSION

The Cavanaughs' in their Memorandum in Support of Motion for Summary Judgment seek summary judgment on the County's "Declaratory Judgment Complaint" arguing that the County does not have a lien on fifty-six (56) lots owned by the Debtor and that the breach of contract claim is not applicable to either Steven L. Cavanaugh or Susan L. Cavanaugh because they were not a party to the Subdivision Improvements Agreements. The Cavanaughs' Statement of Undisputed Facts is patterned virtually word-for-word on the Statement of Undisputed Facts filed by the Bank of the Rockies, wherein the Bank of the Rockies maintained that the County did not have a lien on ten lots in Rolling Glen Subdivision that served as security for Bank of the Rockies.

In the declaratory relief portion of its Amended Complaint, the County seeks, pursuant to MONTANA CODE ANNOTATED ("MCA") § 27-8-, *et seq*, a declaration that Plaintiff is entitled to recover the sum of $10,500 from the sale or conveyance of any lot sold in Rolling Glen Ranch Subdivision after February 13, 2006, for which Plaintiff has not previously been paid under the terms of the subject road improvement agreements and that said amount constitute a lien on the subject lots, and a declaration as to the effect on the Defendants' security interests of the Plaintiff's order suspending final plot approval as to Rolling Glen Ranch, Phase I and II. In Count II of the Amended Complaint, the County contends that Defendant Rolling Glen Ranch

18

Created by Neevia Document Converter trial version http://www.neevia.com

Corporation is in breach of the terms of the Subdivision Improvements Agreements for its failure to construct the roads described in the respective Subdivision Improvements Agreements, pay the sum of $10,500.00 to the County on the conveyance of each lot within the Subdivision, and its failure to pay the balance of $258,399.06 along with other consideration described in the agreements no later than February 13, 2008.

Count II implicates the Cavanaughs and Debtor because, according to the County:

> The Defendants Steven L. Cavanaugh, Susan L. Cavanaugh and Steve Cavanaugh Limited Partnership are the alter egos of Rolling Glen Ranch Corporation which, at all times pertinent hereto, was acting on their behalf and which was controlled by them. To permit them to avoid liability for the obligations described in the agreement would allow them to perpetuate a fraud since, as the actual owners of the property, they are the real parties in interest to the Subdivision improvement agreements.

The County argues, and the Cavanaughs concede, that as non-attorneys, the Cavanaughs are not permitted to represent either the Debtor or Rolling Glen Ranch Corporation.  *See* Mont. LBR 1074-1.  The parties do not dispute that the Debtor, Steve Cavanaugh Limited Partnership, is the owner of the 56 lots that are the subject of the Cavanaughs' motion for summary judgment. Because the Cavanaughs do not claim a lien or ownership interest in the 56 lots, the Court concludes that the Cavanaughs are not a proper party to challenge the validity, priority or extent of the County's alleged lien on the fifty-six (56) lots owned by the Debtor in Rolling Glen Ranch Subdivision.  The Court notes, however, that its Memorandum of Decision and Order entered October 26, 2009, establishes the law of the case.  In such Memorandum of Decision and Order, this Court noted that the County conceded that no express lien exists on the Rolling Glen Ranch Subdivision lots as a result of the Special Improvements Agreements.  The Court also concluded that "a lien against the ten (10) lots at issue in this motion does not exist and was never

19

Created by Neevia Document Converter trial version http://www.neevia.com

created[.]" In the October 26, 2009, Memorandum of Decision, the Court explained:

> The undisputed facts show that Mr. Cavanaugh on behalf of Developer never intended to create a lien in the lots for the benefit of the County for the construction of the road improvements. Commissioner Mann confirms that the County did not intend the Developer to create liens on the lots to guarantee the construction of the road improvements and further confirms through her deposition that only the Developer, Rolling Glen Ranch Corporation, is financially liable for the road improvements through its unsecured guaranty. The Court will not interpret the SIAs to include terms that the parties never intended. The County could have required specific bonding, letters of credit, liens or other means of insuring and guaranteeing the Developer's obligation under the SIAs. The County chose not to do so. The SIAs in paragraph 15 of Exhibits 7 and 8 set forth the County's rights upon Developers default: (1) draw on the Developer's financial guaranty or (2) suspend final plat approval.[1] The SIAs do not identify any rights by the County involving lien foreclosure.[2]

As previously noted, the Cavanaughs may only defend claims that are levied against them personally. The undisputed facts establish that Steven L. Cavanaugh owns 100% of Rolling Glen Ranch Corporation. Steve Cavanaugh Limited Partnership is a closely-held limited partnership. Steven L. Cavanaugh owns 48% of the Debtor, Susan L. Cavanaugh owns 47%, of the Debtor, the Cavanaughs' daughter owns 4% of the Debtor, and Rolling Glen Ranch Corporation, as General Partner, owns 1% of the Debtor. At all times relevant to this case, it appears that Steven L. Cavanaugh was the only individual who had any dominion or control over Rolling Glen Ranch Corporation and Steve Cavanaugh Limited Partnership's activities.

---

[1] The Court issues no opinion upon the appropriateness of the County to suspend the final plat as the Court understands that any prior suspension of the final plat by the County has been vacated by the County's Order dated December 22, 2008.

[2] The Court further issues no opinion upon the continuing contractual obligation of the title company and the Developer to remit money to the County after closing a lot sale when sufficient money remains after paying the Bank's lien, commissions, taxes and other closing costs. Debtor's 4th Amended Disclosure Statement and 3rd Amended Plan state the allowed claim shall be prorated equally among several lots.

Created by Neevia Document Converter trial version http://www.neevia.com

The Court's first inquiry under Count II of the County's Amended Complaint is whether Rolling Glen Ranch Corporation is the alter ego of Steven L. Cavanaugh. The "law of the forum state" determines whether a corporation is an alter ego of its shareholder. *Towe Antique Ford Found. v. Internal Revenue Serv.*, 999 F.2d 1387, 1391 (9th Cir. 1993). In *Towe*, the Ninth Circuit Court of Appeals explains:

> In Montana, "no concrete formula exists under which a court will disregard the separate identity of the corporate entity." [*Hando v. PPG Indus., Inc.*, 236 Mont. 493, 771 P.2d 956, 960 (1989)]. The factors relevant to a finding of alter ego include, but are not limited to:
>
> 1. Whether the individual is in a position of control or authority over the entity;
> 2. Whether the individual controls the entity's actions without need to consult others;
> 3. Whether the individual uses the entity to shield himself from personal liability;
> 4. Whether the individual uses the business entity for his or her own financial benefit;
> 5. Whether the individual mingles his own affairs in the affairs of the business entity;
> 6. Whether the individual uses the business entity to assume his own debts, or the debts of another, or whether the individual uses his own funds to pay the business entity's debts.
>
> *See generally Hando*, 771 P.2d at 960; *Drilcon, Inc. v. Roil Energy Corp., Inc.*, 230 Mont. 166, 749 P.2d 1058, 1063-64 (1988); *Meridian Minerals Co. v. Nicor Minerals, Inc.*, 228 Mont. 274, 742 P.2d 456, 462 (1987); Jody J. Brewster, *Piercing the Corporate Veil in Montana*, 44 Mont.L.Rev. 91, 95-97 (1983); *see also Valley Finance*, 629 F.2d at 172-73.

*Towe Antique*, 999 F.2d at 1391.

The Cavanaughs have wholly failed to show through undisputed facts that Rolling Glen Ranch Corporation is not the alter ego of at least Steven L. Cavanaugh. Steven L. Cavanaugh appears to be the sole officer controlling the day-to-day operations of Rolling Glen Ranch

21

Created by Neevia Document Converter trial version http://www.neevia.com

Corporation.  In addition, Steven L. Cavanaugh presumably dominates and controls the affairs of

Rolling Glen Ranch Corporation and has made substantial contributions to Rolling Glen Ranch

Corporation.  Finally, the evidence suggests that the Cavanaughs have mingled their personal

financial affairs with Rolling Glen Ranch Corporation and the Debtor.  Such facts preclude this

Court from finding that Rolling Glen Ranch Corporation is not the alter ego of at least Steven L.

Cavanaugh.

If Rolling Glen Ranch Corporation is the alter ego of Steven L. Cavanaugh, then Steven

L. Cavanaugh may be both a general and a limited partner of the Debtor.  Pursuant to MCA § 35-

12-803(2), "a general partner of a limited partnership has the liabilities of a partner in a

partnership without limited partners to persons other than the partnership and the other partners."

In addition, MCA § 35-12-703, addressing a limited partner's liability to third parties, reads:

> (1) Except as provided in subsection (4), a limited partner is not liable for the
> obligations of a limited partnership unless, in addition to the exercise of the rights
> and powers as a limited partner, the limited partner participates in the control of
> the business. However, if the limited partner participates in the control of the
> business, the limited partner is liable only to persons who transact business with
> the limited partnership reasonably believing, based on the limited partner's
> conduct, that the limited partner is a general partner.
>
> (2) A limited partner does not participate in the control of the business within the
> meaning of subsection (1) solely by doing one or more of the following:
>
> > (a) being a contractor for or an agent or employee of the limited
> > partnership or of a general partner or being an officer, director, or
> > shareholder of a general partner that is a corporation;
> >
> > (b) consulting with and advising a general partner with respect to the
> > business of the limited partnership;
> >
> > (c) acting as surety for the limited partnership or guaranteeing or assuming
> > one or more specific obligations of the limited partnership;

22

Created by Neevia Document Converter trial version http://www.neevia.com

(d) taking any action required or permitted by law to bring or pursue a derivative action in the right of the limited partnership;

(e) requesting or attending a meeting of partners;

(f) proposing, approving, or disapproving, by voting or otherwise, one or more of the following matters:

> (i) the dissolution and winding up of the limited partnership;
>
> (ii) the sale, exchange, lease, mortgage, pledge, or other transfer of all or substantially all of the assets of the limited partnership;
>
> (iii) the incurrence of indebtedness by the limited partnership other than in the ordinary course of its business;
>
> (iv) a change in the nature of the business;
>
> (v) the admission or removal of a general partner;
>
> (vi) the admission or removal of a limited partner;
>
> (vii) a transaction involving an actual or potential conflict of interest between a general partner and the limited partnership or the limited partners;
>
> (viii) an amendment to the partnership agreement or certificates of limited partnership; or
>
> (ix) matters related to the business of the limited partnership not otherwise enumerated in this subsection (2)(f) that the partnership states in writing may be subject to the approval or disapproval of limited partners;

(g) winding up the limited partnership pursuant to 35-12-1203; or

(h) exercise any right or power permitted to limited partners under this chapter and not specifically enumerated in this subsection (2).

(3) The enumeration in subsection (2) does not mean that the possession or exercise of any other powers by a limited partner constitutes participation by the limited partner in the business of the limited partnership.

Created by Neevia Document Converter trial version http://www.neevia.com

(4) A limited partner who knowingly permits the limited partner's name to be used in the name of the limited partnership, except under circumstances permitted by 35-12-505(1)(b)(I) and (1)(b)(ii), is liable to creditors who extend credit to the limited partnership without actual knowledge that the limited partner is not a general partner.

The Cavanaughs have failed to demonstrate, through undisputed facts, that they are not liable to the County as either general or limited partners of the Debtor. Thus, the Cavanaughs' motion for summary judgment is denied. In accordance with the foregoing, the Court will enter a separate order in this Adversary Proceeding which will provide as follows:

IT IS ORDERED that the Motion for Summary Judgment filed by Steven L. Cavanaugh and Susan L. Cavanaugh on November 23, 2009, at docket entry no. 211, is DENIED.

BY THE COURT

HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana

24

Created by Neevia Document Converter trial version http://www.neevia.com